UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| GARRETT MIXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-01005-SLD-RLH |
| | ) | |
| CITY OF GALESBURG, UNKNOWN | ) | |
| OFFICERS OF GALESBURG POLICE | ) | |
| DEPARTMENT, and TIMOTHY A. | ) | |
| SPITZER, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are Plaintiff Garrett Mixon's motion for summary judgment, ECF No.

22, and Defendants City of Galesburg and Timothy A. Spitzer's motion for summary judgment,

ECF No. 24.  For the following reasons, Unknown Officers of Galesburg Police Department are

DISMISSED; Mixon's motion for summary judgment is DENIED; and Defendants' motion for

summary judgment is GRANTED.

1

BACKGROUND[1]

I.    Facts of the Case

a. The Shooting and Immediate Aftermath

After 1:00 a.m. on November 6, 2022, there was a shooting outside of The Store, a Galesburg, Illinois bar. Mixon, the only person known to be injured, was shot in his right leg. After hearing gunshots, Johnathon Fox, then a community service officer with the Galesburg Police Department, exited the house where he was staying, saw an injured Mixon, and attempted to render aid. While Fox was assisting him, a car drove up to where Mixon lay on the ground and the driver exited the vehicle and put Mixon in the car. The driver, Kevin Billingslea, was in a relationship with Jaqueline Tate, Mixon's cousin and the passenger. Billingslea drove away with Mixon in the back seat. Mixon and Tate both testified that they were going "[t]o the hospital." Mixon Dep. 101:22–102:1, Mixon Mot. Summ. J. Ex. 4, ECF No. 22-4; Tate Dep. 26:4–6, Defs. Mot. Summ. Ex. E, ECF No. 25-4.

In close conjunction with Billingslea leaving the scene, a Galesburg Police Department unit arrived. At his deposition, Fox testified that he "pointed [officers] in the direction" of Billingslea's car and "told [an officer] that . . . the person that was shot was in the back seat of" Billingslea's car. Fox Dep. 30:10–31:24, Mixon Mot. Summ. J. Ex. 3, ECF No. 22-3. A police report from that evening states that Fox "pointed at a grey vehicle which had just passed [a]

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The facts related here are, unless otherwise noted, taken from Defendants' statement of undisputed material facts, Defs. Mot. Summ. J. 3–11; Mixon's response thereto and statement of additional material facts, Mixon Resp. 2–21, ECF No. 29; Mixon's statement of undisputed material facts, Mixon Mot. Summ. J. 3–10; Defendants' response thereto and statement of additional material facts, Defs. Resp. 3–25, ECF No. 28; Mixon's reply to Defendants' additional material facts, Mixon Reply 3–9, ECF No. 32; Defendants' reply to Mixon's additional material facts, Defs. Reply 2–19, ECF No. 38; and the exhibits to the motions, responses, and replies. Where the parties disagree about the facts, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

patrol vehicle and made a statement in reference to the back passenger shot a firearm." Offense Rep. 12–13, Defs. Mot. Summ. J. Ex. G, ECF No. 25-6.

Police then followed Billingslea's car for several blocks with their emergency lights activated.  Near 900 East South Street, a little less than a mile from where a gun was eventually recovered, Billingslea stopped the car, extended his left hand out of the driver's window and made large waving gestures.  Dashcam Footage, at 02:11–02:20, Defs. Mot. Summ. J. Ex. F, ECF No. 25-5.  The police officer exited his vehicle and repeatedly yelled for the occupants to put their hands out of the car.  *Id.* at 02:20–02:26.  In response, someone stated that an individual inside was shot, and then Billingslea resumed driving.  *Id.* at 02:26–02:40.  The police continued following Billingslea's car.  Billingslea then crashed into a railroad bridge but continued to drive. Tate testified that she saw the police's emergency lights and that Billingslea kept driving because they were determined to get Mixon to the hospital.  Billingslea's car ultimately came to a complete stop at the intersection of Chambers Street and Peck Street.  An ambulance transported Mixon to the hospital for treatment and Billingslea and Tate were transported to the Public Safety Building.

### b. The Investigation

Spitzer, a Galesburg Police Department detective, worked as the case's lead investigator. During an interview with Spitzer, Billingslea stated that he was driving with Tate when they saw Mixon lying on the corner.  Billingslea said he was not present at the shooting and did not hear gunshots prior to spotting Mixon on the corner.  But during Tate's interview with Spitzer, she shared that, although she was not in the area during the shooting, she and Billingslea heard and discussed the gunshots.  She told Spitzer that when they approached the intersection by The Store, she saw a group of people on a corner and recognized Mixon as the injured individual.

3

While investigating the scene of the shooting, Galesburg police located nine fired cartridge casings, eight of which were 9mm and one which was .380 caliber. They also located two unspent rounds of 9mm caliber ammunition. Then, on November 7, 2022, a child waiting at a school bus stop discovered a loaded .380 caliber Smith & Wesson Bodyguard handgun at 291 Sumner Street. Adult Ashlee Stanley took the gun from the child and notified Galesburg Police Department. This .380 firearm was recovered along the path Billingslea drove and two blocks from where he ultimately stopped driving. After locating the firearm at 291 Sumner Street, Spitzer began considering Mixon as a possible suspect. Billingslea's brake lights turned on several times as he drove along East North Street, which intersects with Sumner Street.[2]

Both the .380 shell casing recovered from the scene of the shooting and the .380 handgun found at 291 Sumner Street were sent to the Illinois State Police ("ISP") Crime Lab for analysis. These ISP tests determined that the recovered shell casing had been fired by the same .380 handgun that was recovered.[3]

---

[2] Although Spitzer wrote in his police report that Billingslea's car braked specifically "when in the area of E North St[reet] at Sumner St[reet]," Offense Rep. 24, the Court agrees with Mixon, Mixon Resp. 9–10, that the police vehicle was too far from Billingslea's to clearly establish at which points along East North Street the brake lights activated. *See* Dashcam Footage, at 03:18–03:41 (depicting the police vehicle driving along East North Street and Billingslea's car ahead of it); Video Mapping, at 00:27–00:49, Defs. Mot. Summ. J. Ex. C, ECF No. 25-2 (depicting the path driven by Billingslea and showing that the vehicles were on East North Street after turning at the bridge).

[3] Spitzer testified at his deposition that the .380 shell casing was found in "the area where . . . Mixon [wa]s seen running." Spitzer Dep. 125:15–20, Mixon Mot. Summ. J. Ex. 2, ECF No. 22-2. Evidence photos depict the .380 casing in the middle of Berrien Street, essentially in line with the west side of The Store. *See generally* Evidence Photos, Defs. Mot. Summ. J. Ex. I, ECF No. 25-8; Spitzer Dep. 12:10–20. But the surveillance video does not show the area of Berrien Street from which the casings were recovered. *See generally* Surveillance Video, Defs. Mot. Summ. J. Ex. B, ECF No. 25-1. The surveillance video was taken at 442 South Chambers Street. *See* Fox Dep. 14:22–115:1. It shows the intersection of Berrien Street and South Chambers Street. *Id.* Mixon is seen running into the intersection and then falling to the ground as shots can be heard. *Id.* at 00:39–00:44. He tries to stand but falls back down. *Id.* at 00:44–01:00. Someone assists in moving Mixon out of the intersection and several people, including Fox, attempt to help Mixon while he is on the side of the road. *Id.* at 01:00–03:39. Then, Billingslea's vehicle enters the frame, turning south from Berrien Street and onto South Chambers Street, where Mixon lay. *Id.* at 02:11–02:38. After several seconds, the vehicle drives south along South Chambers Street, Fox waves down a nearby police officer, and the pursuit described above ensues. *Id.* at 02:38–02:49. Without knowing where Mixon exited The Store from, it is not a reasonable inference that he ran through the area of Berrien Street where the casings were found.

At this point in the investigation, Spitzer developed a theory that the recovered .380 firearm may have been thrown out of driver's side window when Billingslea's vehicle briefly stopped at 900 East South Street because that firearm was discharged at the scene of the shooting, recovered along the path of Billingslea's vehicle, and Mixon was both at the scene of the shooting when it occurred and in Billingslea's vehicle when it passed 291 Sumner Street.

### c.  The Arrest and Prosecution

There are three ways in which Galesburg police officers can request an arrest warrant. First, the police officer can electronically send a warrant to the Knox County State Attorney's ("KCSA") office.  Spitzer Dep. 194:3–13, Mixon Mot. Summ. J. Ex. 2, ECF No. 22-2.  Second, the police officer may personally visit the KCSA office to share information and request a warrant.  *Id.* 194:14–19.  Finally, the police officer can send an email directly to an attorney requesting a warrant.  *Id.* 194:19–20.  The KCSA prosecutors review information presented by police to determine whether they believe there is sufficient probable cause to file charges. Prosecutors then meet with an available judge and present a summary of the facts they believe constitute probable cause in support of their request for an arrest warrant. Typically, there is no written application nor transcript of the meeting between the judge and prosecutor.

In this case, Spitzer availed himself of all three methods of requesting an arrest warrant. Among other things, he submitted an investigation report to the KCSA's office and visited State Attorney Jeremy Karlin to personally request a warrant.  KCSA Ihsaan Arman was handling arrest warrant requests at the time.  On March 3, 2023,[4] Arman went to a Knox County judge and requested an arrest warrant for Mixon based on information compiled from Spitzer's

---

[4] The parties seem to both agree that the arrest warrant was issued on March 7, 2023, *see* Defs. Mot. Summ. J. 10; Mixon Resp. 13—though Mixon also states in his own motion that the warrant was issued on March 9, 2023, *see* Mixon Mot. Summ. J. 8—but the date on the arrest warrant itself is March 3, 2023, Arrest Warrant, Defs. Mot. Summ. J. Ex. L, ECF No. 25-11.  The Court will use the date provided within the arrest warrant.

requests.  The judge signed and issued an arrest warrant for Mixon.  That same day, Arman

drafted, signed, and swore to the truth and accuracy of the Information which charged Mixon

with (1) Aggravated Discharge of a Firearm and (2) Unlawful Possession of a Weapon by a

Felon.[5]  There is no record of what Arman told the issuing judge, nor does Arman have any

recollection of that conversation.

On March 25, 2023, Mixon was arrested at The Store pursuant to the March 3, 2023,

warrant.[6]  Karlin then proceeded with a preliminary hearing in Mixon's case.  Mixon was

released on bond and on April 26, 2023, Judge James R. Standard presided over Mixon's

preliminary hearing and found probable cause.  Stanley ultimately refused to testify and, as a

result, the prosecution had insufficient evidence to prosecute Mixon.  His criminal case was

dismissed *nolle prosequi* by Karlin on September 7, 2023.

## II.    Procedural History

Mixon filed his initial complaint on January 5, 2024.  Compl., ECF No. 1.  After review,

the Court transferred his case from the Peoria Division of the Central District of Illinois to the

Rock Island Division.  Jan. 5, 2024 Text Order (McDade, J.).  On February 22, 2024, Mixon

filed the operative amended complaint.  Am. Compl., ECF No. 3.  Together Spitzer and

Galesburg filed their answer, Answer, ECF No. 8, and discovery proceeded.

Mixon brings six counts: (1) federal false arrest against Spitzer and Unknown Officer

Defendants; (2) federal unlawful detention against Spitzer and Unknown Officer Defendants; (3)

---

[5] The parties again seem to agree that this was drafted, signed, and sworn to on March 7, 2023, *see* Defs. Mot. Summ. J. 10; Mixon Resp. 13, but the document itself reflects that it was subscribed and sworn to on March 3, 2023, Information 3, Defs. Mot. Summ. J. Ex. M, ECF No. 25-12.  The Information was not filed until March 7, 2023, but it was prepared and sworn to on March 3, 2023.  *Id.* at 1, 3.

[6] Defendants say Mixon was arrested on April 14, 2023, *see* Defs. Resp. 24, ECF No. 28, but the evidence they cite in support states he was arrest on March 25, 2023, Mixon Dep. 118:22–119:14; Offense Rep. 26, which matches the date Mixon includes in his motion, *see* Mixon Mot. Summ. J. 8.

federal malicious prosecution against Spitzer and Unknown Officer Defendants; (4) state false arrest/wrongful imprisonment against Spitzer, Unknown Officer Defendants, and Galesburg; (5) state malicious prosecution against Spitzer and Unknown Officer Defendants; and (6) state indemnification against Galesburg.  Am. Compl. 7–10.  Mixon moves for summary judgment on all six counts, arguing that, among other things, there is a complete absence of probable cause. *See generally* Mixon Mot. Summ. J.  Defendants also move for summary judgment on all counts, arguing that, among other things, there was sufficient probable cause to justify Mixon's arrest, detention, and prosecution.  *See generally* Defs. Mot. Summ. J.

## DISCUSSION

### III.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997).  When reviewing cross-motions for summary judgment, the court must view the evidence in the light most favorable to and draw all reasonable inferences in favor of the party against whom the motion under consideration was filed.  *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017).  "A genuine issue for trial exists only when a reasonable [factfinder] could find for the party opposing the motion based on the record as a whole."  *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (quotation marks omitted).

7

The party moving for summary judgment has an initial burden to "inform the district court why a trial is not necessary," but how the party discharges that burden depends on whether the party has the ultimate burden of proof on a claim. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). When the movant bears the ultimate burden of proof on a claim, it "must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). When the movant does not bear the ultimate burden of proof on a claim, it can satisfy its initial burden by pointing to an absence of evidence to support the non-movant's case. *Modrowski*, 712 F.3d at 1168. If the movant has discharged its burden, the non-movant must "respond . . . by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The non-movant cannot refer to its own pleadings, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), but must instead "cit[e] to particular parts of materials in the record, including depositions, documents, [and] . . . affidavits or declarations" or "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

IV.   **Analysis**

a.   **Unknown Officers of the Galesburg Police Department**

Five of Mixon's claims (all except for indemnification) are against both Spitzer and unknown police officers of Galesburg Police Department. Am. Comp. 7–10. But Mixon's motion for summary judgment makes no mention of any unknown officers in its statement of facts or in its argument section. *See generally* Mixon Mot. Summ. J. Further, the Court does not see anywhere in which Mixon attests to their identity. *Id.* The motion's sole mention of the

8

Unknown Officers of the Galesburg Police Department is their inclusion in the list of Defendants. Defendants, for their part, point out in a footnote that the "Unknown Officer Defendants . . . have not been named and are not parties to this action." Defs. Mot. Summ. J. 1 n.1.

Without any action on Mixon's part indicating that he has ascertained the identity of the unknown officers and without any explicit argument as to the officers' involvement in Mixon's motion for summary judgment, the Court dismisses Unknown Officer Defendants from this case. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) ("Due to [the plaintiff's] failure to identify this defendant and the lack of any record that this individual was served with process, the district court's grant of summary judgment for this unknown and unnamed defendant is modified to dismiss this defendant from the case.").

### b. Section 1983 Claims

Mixon brings three claims under 42 U.S.C. § 1983: (1) false arrest (Count I); (2) unlawful detention (Count II); and (3) malicious prosecution (Count III). Am. Compl. 7–8. These are all Fourth Amendment claims.

### i. False Arrest (Count I)

To succeed on a false arrest claim, "a plaintiff must show that there was no probable cause for his arrest." *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) (quotation marks omitted). Probable cause is objective, *Whren v. United States*, 517 U.S. 806, 813 (1996), and "deals not with hard certainties but with probabilities," *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013). When a police officer "cause[s]" an arrest without probable cause, they "may be held liable for a violation of the Fourth Amendment." *Richardson v. City of Chicago*, No. 1:22-CV-06456, 2025 WL 919520, at *3 (N.D. Ill. Mar. 26, 2025); *Glass v.*

9

*Village of Maywood*, No. 22 C 164, 2024 WL 4007643, at *5 (N.D. Ill. June 3, 2021) (holding that a non-arresting officer may still be liable for false arrest if they "undert[ook] some action prior to, or perhaps at the time of, [the] order to arrest" in a way that the non-arresting officer "directly caused or participated in the alleged constitutional deprivation").

### 1. Judicially Authorized Arrest Warrant

Where, as here, an arrest is executed pursuant to a warrant, the probable cause balance favors the government. When a judge authorizes an arrest, "[the court] presume[s] the validity of [the] warrant and the information offered to support it." *Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022) (third alteration in original) (quotation marks omitted). In other words, the court "presume[s] probable cause." *Id.* An arrest warrant loses its presumptive validity "if the warrant application was so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* at 1068–69 (quotation marks omitted). "In such circumstances, even a facially valid arrest warrant does not shield otherwise unreasonable conduct." *Id.* at 1069 (quotation marks omitted). An arrest warrant also loses its presumptive validity "on a showing that the officer who sought the warrant knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officer's determination that probable cause existed." *Id.* (quotation marks omitted). "This includes circumstances where an officer intentionally or recklessly withheld material facts from the warrant-issuing judge." *Id.* (quotation marks omitted). But these are both narrow exceptions. *Id.* If a "reasonably well-trained officer" in the same position as the defendant-officer "would have known" that their warrant application failed to establish probable cause, then "the officer's application for a warrant was not objectively reasonable,

because it created the unnecessary danger of an unlawful arrest." *Malley v. Briggs*, 475 U.S. 335, 345 (1986).

The plaintiff bears the burden of overcoming an arrest warrant's presumptive validity. *Myers*, 53 F.4th at 1067. In order to defeat the presumption at summary judgment, the plaintiff "must show that a genuine issue of material fact exists [as to whether] a reasonable officer would have known that the warrant application failed to establish probable cause, or . . . [the officer] made false statements or omitted material facts in support of probable cause." *Id.* at 1070. Mere conjecture is not enough to defeat an arrest warrant's presumptive validity. *Id.*

Spitzer argues that the arrest warrant authorizing Mixon's arrest is presumptively valid, thus establishing probable cause to arrest Mixon and that, even without considering the arrest warrant, probable cause existed. Defs. Mot. Summ. J. 12–18. Mixon argues that the complete absence of a warrant application or any record of what information was presented to the issuing judge should eliminate the warrant's presumption of validity. Mixon Resp. 24–25, ECF No. 29 ("Here, there was no warrant application at all, and no written record of what the prosecutor represented to the judge to obtain the warrant. Thus, by definition, the non-existent warrant application was 'lacking in indicia of probable cause.'").

Although Mixon is correct that there is no record or information as to what exactly was discussed between Arman and the issuing judge when requesting the arrest warrant, *see* Arman Dep. 64:16–65:2, Mixon Mot. Summ. J. Ex. 8, ECF No. 22-8; *see also* Karlin Dep. 50:15–51:16, Mixon Mot. Summ. J. Ex. 7, ECF No. 22-7, the Court is unconvinced by Mixon's argument. First, Mixon cites nothing providing that a written application for an arrest warrant or a recording of the prosecution's request for an arrest warrant is required under the law. And second, while seeking an arrest warrant for Mixon, Spitzer submitted a report to the KCSA office requesting

11

charges, directly emailed an attorney requesting the warrant, and personally went to the KCSA office to discuss the case. So there are at least two documents—the report and an email—that could shed light on the information Spitzer provided to the prosecutors and that Arman in turn relied upon when discussing the case with the issuing judge. But Mixon makes no mention of these materials in his argument. The parties submitted the police report that was forwarded to the KCSA. *See generally* Offense Rep. Mixon does not explain why that report—which both Arman, Arman Dep. 22:12–25, and Karlin, Karlin Dep. 49:24–50:23, testified would form the basis of what prosecutors tell the judge—is not probative of what information was presented to the issuing judge. And it is unclear whether Mixon requested the emails between Spitzer and the KCSA requesting an arrest warrant—none appear to be cited in the summary judgment briefing. Because of this apparent failure to utilize all available evidence, Mixon's argument that the warrant application loses its presumptive validity due to the lack of information is a non-starter.

Neither making an argument that the information provided to the judge was, in fact,[7] so lacking in indicia of probable cause that it would be unreasonable to think probable cause existed nor identifying any evidence that false statements were made to the judge, Mixon has not met his burden to rebut the presumption of probable cause created by the arrest warrant. *See Johnson*, 53 F.4th at 1068. Accordingly, he cannot establish his false arrest claim.

### 2. Probable Cause

Even if there were no arrest warrant in this case, the Court would find that probable cause for Mixon's arrest existed. The existence of probable cause for an arrest depends on the elements of the underlying criminal offenses. *Abbott*, 705 F.3d at 715. Mixon was arrested for

---

[7] Instead, he argues that "[a]ny warrant application would have been so lacking in probable cause that any reliance on it would have been unreasonable." Mixon Resp. 25. But this hypothetical argument essentially boils down to an argument that there was no probable cause to arrest Mixon, which the Court addresses next.

"the offense(s) of *Aggravated Discharge Of A Firearm* [and] *Unlawful Use Of Weapons By A Felon*." Arrest Warrant, Defs. Mot. Summ. J. Ex. L, ECF No. 25-11. The Information specifies that Mixon was charged with violating 720 ILCS 5/24-1.2(a)(1) and (b) (Aggravated Discharge of a Firearm) and 720 ILCS 5/24-1.1(a) and (e) (Unlawful Possession of a Weapon by a Felon). Information 1–2, Defs. Mot. Summ. J. Ex. M, ECF No. 25-12.

The elements of Unlawful Possession of a Weapon by a Felon are (1) knowingly (2) possessing (3) any firearm, firearm ammunition, or otherwise prohibited weapon if (4) he has been convicted of a felony. 720 ILCS 5/24-1.1(a). The Court finds that there was probable cause that Mixon committed this crime. Probable cause requires "only a probability of criminal activity." *Whitlock v.* Brown, 596 F3d 406, 411 (7th Cir. 2010). Both probable cause and possession of a firearm can be based on circumstantial evidence, *see, e.g.*, *Morales v. City of Chicago*, No. 21 C 4058, 2023 WL 1341972, at *5 (N.D. Ill. Jan. 31, 2023) ("Actual possession, like probable cause, can be based on circumstantial evidence."), and the circumstantial evidence in this case supports a finding of probable cause that Mixon unlawfully possessed the .380 firearm. In evaluating the circumstantial evidence, *Morales v. City of Chicago* is instructive. *Id.* The *Morales* court found that there was probable cause to arrest the plaintiff for unlawful possession of a weapon by a felon because the facts established that when the officer "approached [the] plaintiff and merely said, 'sir,' [the] plaintiff immediately began running from her"; the plaintiff falsely stated that he had two warrants; an officer overheard the plaintiff say "bang, bang" to a bystander; and "[f]ive minutes later, [the officer] found a gun behind the same rain barrel that [the] plaintiff was climbing over" while running from her. *Id.* at *4. Like how the *Morales* plaintiff did not stop when pursued by police on foot and in a vehicle, it is undisputed that Billingslea's vehicle, with Mixon in it, did not stop for a police car with activated

13

lights.  *See generally* Dashcam Footage.  In both this case and *Morales*, the firearm was recovered along the path the plaintiffs took while not stopping for police.  The .380 casing located outside The Store matched the .380 firearm found at 291 Sumner Street, Offense Rep. 17, 23, which the vehicle Mixon was in drove past, *id.* at 20.  This, in conjunction with the fact that Mixon was the only person in the vehicle confirmed to be present at The Store during the shooting, Spitzer Dep. 66:12–67:5, and that the vehicle braked throughout its journey from The Store to the intersection where it ultimately stopped, *see generally* Dashcam Footage, supports Spitzer's theory that Mixon had the .380 firearm at The Store and disposed of it while in Billingslea's vehicle.  That Mixon was present at The Store during the shooting, Mixon Dep. 79:3–80:9, lends stronger support to believing he possessed a gun than the overheard statement of "bang, bang" from the plaintiff in *Morales* when nothing else indicated a weapon was involved.  And Mixon has a felony conviction.  *Id.* 38:13–80:9 (testifying to a 2009 Iowa felony of possession or distribution of cocaine).  This is sufficient to establish probable cause.

Mixon focuses on the facts that suggest he did not possess a firearm, like that there was no eyewitness who saw him with a firearm, that the video surveillance evidence does not show him with a firearm, that there is no fingerprint or DNA evidence connecting him to the gun, and more, *see* Mixon Mot. Summ. J. 13–23, but those are somewhat beside the point.  "Police are entitled to leave to the criminal process the full examination of potential defenses." *Phillips v. Allen*, 668 F.3d 912, 914 (7th Cir. 2012).

Because a finding of probable cause to arrest for any charge means the arrest itself was sufficiently supported by probable cause, *McComas v. Brickley*, 673 F.3d 722, 727 (7th Cir. 2012), the Court need not address whether probable cause existed for the Aggravated Discharge of a Firearm charge under 720 ILCS 5/24-1.2(a)(1).  As Mixon's arrest on the Unlawful

14

Possession of a Weapon by a Felon count was effectuated with probable cause, Mixon has failed to establish a Fourth Amendment false arrest claim.

### ii. Unlawful Detention (Count II)

A plaintiff can also claim that a continued detention after his initial arrest violated the Fourth Amendment. *Lee v. Harris*, 127 F.4th 666, 675 (7th Cir. 2025). This type of claim would be particularly relevant as distinct from a false arrest claim if there was evidence that "probable cause dissipate[d] before [the plaintiff's] release." *Id.* Mixon was detained from the time he was arrested on March 25, 2023, until he bonded out. But he points to no evidence developed between the time the arrest warrant was issued and when he was released that would cause probable cause to dissipate. *See generally* Mixon Mot. Summ. J. 12–27. As there was probable cause to arrest and continue to detain him, Mixon cannot establish an unlawful detention claim.

### iii. Malicious Prosecution (Count III)

In order to establish a Fourth Amendment malicious prosecution claim, a plaintiff must show that "(1) the judicial proceeding was instituted without probable cause; (2) the motive for the proceeding was malicious; and (3) the prosecution ended in the plaintiff's favor." *Lee*, 127 F.4th at 676. Again, the Court has already found that probable cause to arrest Mixon existed based on the arrest warrant and the facts known to the State at the time of Mixon's arrest. The charges were filed via Information in this case nearly simultaneously with the arrest warrant, Information 1 (subscribed and sworn to March 3, 2023); Arrest Warrant (issued March 3, 2023), so Mixon cannot show that the State lacked probable cause to initiate charges against him. Moreover, Judge Standard found probable cause for the charges at a hearing held on April 23, 2023. *See* Prelim. Hr'g Tr. 24:6–8, Defs. Mot. Summ. J. Ex. N, ECF No. 25-13. The Court sees

15

no reason this judicial determination of probable cause would not, like a judge's issuance of an arrest warrant, also be presumptive evidence that probable cause existed.  Mixon does not address this judicial finding at all.  As Mixon cannot show that a judicial proceeding was instituted against him without probable cause, he cannot establish his malicious prosecution claim.

### iv.   Section 1983 Conclusion

In sum, because Mixon cannot show that probable cause was lacking for his arrest, detention, or prosecution, the Court denies his motion and grants Defendants' motion as to his § 1983 claims.  Both Mixon and Spitzer raise several other arguments in their motions on Mixon's § 1983 claims, most notably about causation and qualified immunity; however, the Court does not address those because the presence of probable cause renders any further analysis of the parties' arguments unnecessary.

### c.   State Law Claims

Mixon also brings three state law claims: (1) false arrest/wrongful imprisonment (Count IV); (2) malicious prosecution (Count V); and (3) indemnification (Count VI).  Am. Compl. 9–10.  "[I]t is the well-established law of th[e Seventh] [C]ircuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."  *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also* 28 U.S.C. § 1367(c)(3).  However, in some cases, a "federal decision of the state-law claims on the merits" is appropriate.  *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).  "[A] district court should consider and weigh the factors of judicial economy, convenience, fairness and comity."  *Id.*  If a district court retains jurisdiction over state supplemental claims, it should state its reasons for doing so.  *Groce*, 193 F.3d at 501.

The Court retains jurisdiction over Mixon's state law claims because "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter to the state court." *Wright*, 29 F.3d at 1251. The Court's finding that no reasonable jury could conclude there was an absence of probable cause also disposes of his state law false arrest/wrongful imprisonment and malicious prosecution claims, as discussed in further detail below, so judicial economy and convenience favor resolving these claims in this federal suit. And the resolution of all Mixon's federal claims and these two state law claims also allows the Court to resolve his final state law claim of indemnification.

### i. False Arrest/Wrongful Imprisonment

"False imprisonment is an unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant." *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1231 (Ill. 1990). In order to establish a false arrest or wrongful imprisonment claim in Illinois, a plaintiff must establish (1) "that the plaintiff was restrained or arrested by the defendant" and (2) "that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Id.* When determining whether the defendant acted without reasonable grounds, courts are really determining whether there was probable cause. *See Poris v. Lake Holiday Prop. Owners Ass'n*, 983 N.E.2d 993, 1007 (Ill. 2013) (holding that "[b]ased upon the facts of this case, plaintiff cannot establish that [defendant] acted without reasonable grounds or probable cause to believe that an offense was committed by plaintiff" and analyzing the false arrest/wrongful imprisonment claim for the existence of probable cause). "Probable cause is an absolute bar" to a false arrest/wrongful imprisonment claim. *Id.*

As already discussed, this Court has found that probable cause to arrest Mixon existed for two different reasons: first, the presumptive validity of his arrest warrant; and second, the

17

existence of probable cause based upon the evidence for his charge of unlawful possession of a weapon by a felon. *See supra* Section IV(b). For these reasons, Mixon's Illinois false arrest/wrongful imprisonment claim cannot succeed. Mixon's motion for summary judgment as to his state false arrest/wrongful imprisonment claim is denied and Defendants' motion for summary judgment is granted.

### ii.  Malicious Prosecution

To establish malicious prosecution in Illinois, a plaintiff must show: (1) the commencement or continuance of criminal proceedings by the defendant; (2) favorable termination of those proceedings; (3) an absence of probable cause; (4) malice; and (5) damages. *Boyd v. City of Chicago*, 880 N.E.2d 1033, 1045 (Ill. App. Ct. 2007). "The absence of any one of these elements bars a plaintiff from pursuing the claim." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). In this case, even when viewing the evidence in the light most favorable to Mixon, he cannot establish two of the required elements of state malicious prosecution. First and foremost, the Court has already found the existence of probable cause. But, for the sake of thoroughness, the Court will address an additional barrier that prevents Mixon's action from succeeding, even if probable cause did not exist.

"[A] person can be liable for commencing or continuing a malicious prosecution even if that person does not ultimately wield prosecutorial power or actively deceive prosecutors"; rather, "liability for malicious prosecution extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Beaman v. Freesmeyer*, 131 N.E.3d 488, 499 (Ill. 2019) (quotation marks omitted). Thus, liability depends on how instrumental of a role the defendant played in the prosecution. *Id.* "Police officers may be subject to liability for malicious prosecution if they initiate a criminal

18

proceeding by presentation of false statements, or by withholding exculpatory information from the prosecutor." *Id.* (alteration and quotation marks omitted).  Although it could be argued that Spitzer played a significant role in the initiation of Mixon's prosecution, Mixon presents no evidence that Spitzer presented false statements or withheld exculpatory information from the KCSA.  As such, he cannot succeed in establishing that Spitzer commenced or continued the criminal proceedings.

Ultimately, Mixon's state law malicious prosecution claim fails; he has not established the genuine dispute of material fact that is necessary to survive summary judgment.  As such, Mixon's motion for summary judgment on his Illinois malicious prosecution claim is denied and Spitzer's motion is granted.

### iii.  Indemnification

Defendants request dismissal of Mixon's indemnification claim against the City of Galesburg since Spitzer is not liable.  Defs. Mot. Summ. J. 25.  Because Defendants successfully moved for summary judgment on all of Mixon's other claims, they are also entitled to summary judgment as to Mixon's indemnification claim.  *Cf. Anderson v. City of Rockford*, 932 F.3d 494, 513 (7th Cir. 2019) (reinstating the plaintiffs' indemnification claim when "potential liability of certain individual officers" remained at the summary judgment stage).

**CONCLUSION**

For these reasons, Unknown Officers of Galesburg Police Department are DISMISSED;

Plaintiff Garrett Mixon's motion for summary judgment, ECF No. 22, is DENIED; and

Defendants City of Galesburg and Timothy A. Spitzer's motion for summary judgment, ECF No.

24, is GRANTED.  The Clerk is directed to enter judgment and close the case.

Entered this 23rd day of March, 2026.

s/ Sara Darrow
_____
SARA DARROW
UNITED STATES DISTRICT JUDGE
